## Case No. 1,106.
### BATTEN v. SILLIMAN.
[3 Wall. Jr. 124.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1855.

PATENTS FOR INVENTIONS —PRELIMINARY INJUNCTION BEFORE RIGHT ESTABLISHED AT LAW — IRREPARABLE INJURY.

1. Where an alleged infringement of a patented invention, consists in the use of some improvement in expensive machinery, which has been adopted in good faith by a defendant, and where the profit of the patentee consists not in the monopoly of selling his machine, but in the price of licenses given to others to use it; it being the interest of the patentee that all persons should use his improvement, provided they pay him his fee for a license; and the injury being, not in their using his invention, but in their not paying him for using it—this court, sitting in chancery—though it does not in such capacity necessarily act as auxiliary to a court of law, but may render a final decree on a patent—will not, before a right is established at law, grant a preliminary injunction except in a clear case; since it might ruin the defendant, without doing any corresponding benefit to the patentee; and since the main objects of an injunction can be obtained by making the defendant keep an account until the right is decided at law.

[See Morris v. Lowell Manuf'g Co., Case No. 9,833.]

2. The court distinguishes such a case as that just mentioned from the case of a medicine, for example, where the patentee's profit consists in a monopoly of sale, and the defendant has been at little or no expense, while his competition might be highly injurious to the complainant; and would refuse an injunction in the former case, when it might, perhaps, grant it in the latter.

In equity. This was an injunction bill filed by Batten, claiming to be the inventor of a machine—certain rollers for breaking and screening coal—against the defendant, Silliman, who, it was admitted, was using a machine similar in several respects to the

one of which the complainant alleged himself to be the inventor. [Injunction denied.]

Most or all of the ordinary formal allegations (though not those usual in such bills, that the plaintiff had enjoyment and possession, and in consequence thereof had made sale of licenses or rights) were made in the bill; and it was further alleged that the validity of the patent had been tried at law, in this court, in three cases (one of them being Batten v. Taggert, reported in its conclusion, on a point of law, supra, [Case No. 1,107,] in which after ample preparation and numerous notices, no witness was produced or could be produced to impeach or disprove the originality of the invention; and that although these verdicts were afterwards set aside by the court, upon a technical question in no way affecting the originality of the invention, this decision was finally reversed in the supreme court of the United States, on error, and the patent sustained. See Battin v. Taggert, 17 How. [58 U. S.] 74.

Numerous ex parte affidavits were filed in behalf of the complainant, stating that the defendant had put into operation, and was still using, a machine constructed on the same plan and substantially like the machine described in the patent and bill of the complainant, of which patent, as these several deponents verily believe, the machine used by the defendant was an infringement.

The defendant, on the other hand, swore in his answer that he had a good defence both as to matter of law and matter of fact; that he was advised that the complainant never had such possession and enjoyment of the alleged invention as is required in applications of the sort now made by him; that he had never made sale of licenses, rights or interests in consequence thereof—a matter which, on an injunction bill, he ought, if he had so made sale, to aver,—but that on the contrary, machines substantially like the one described in his patent had been extensively and were still so used, and the complainant's right in almost all cases resisted or denied. The answer then went into a history of the suits alleged by the complainant to have been brought by him under his patent, and set forth some blunders and carelessness in his specifications at the patent office, and delays consequent thereon, and showed also that a much greater delay than was either indispensable or necessary had taken place on his part in urging trials at law of his rights; that in regard to these suits motions had been made by the defendant for continuances on the ground of evidence, the discovery of which was obtained at too late a period to be included in the notice of defence; but that these motions were unsuccessful, and that the causes were therefore submitted to the jury solely upon the question of damages; all evidence as to the want of novelty being excluded; and that the verdicts given for the plaintiff were given independently of any evidence

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

on the point last mentioned; that moreover these verdicts were afterwards set aside and new trials granted in each case upon views of law applicable to the whole merits, and not, as the bill alleged, upon a mere technicality; that while, as the complainant alleged, it was true that on writs of error being taken by him, the decision of this court was reversed, yet, that the cases were remanded by the court above with directions to award a venire facias de novo; that no farther proceedings had been taken by the complainant in those actions at law; that notwithstanding the verdicts given, as mentioned by the complainant, in his favor, no judgments had ever been entered on them, and that therefore the complainant had failed to obtain a verdict and judgment, and that his right had in no wise been established by any legal proceedings, but on the contrary, was still unsettled and in dispute, and that the actions at law were still pending, and the defendants preparing to make defence in them.

The answer alleged further that machines quite similar to that claimed by the complainant as his, had been extensively used for breaking coal before and since he obtained his patent; and that notwithstanding the granting of the patent, many such machines had been run and used by the workers of mines in consequence of the opinion generally entertained that the complainant, Batten, had no valid rights under such patent, also by reason of his apparent indifference in prosecuting such claims, together with his failure successfully to establish them in the suits in this court; and that the defendant believed and expected on a trial at law to prove an entire want of originality in the invention. The answer further stated that the defendant had not himself erected the machine now sought to be enjoined, but had bought it at Marshall's sale on an execution from this court, about five years ago, and had never any notice to desist from its use; and concluded with the allegations that he was competent to satisfy any damages which might be recovered against him by the complainant at law; that the breaking apparatus, its fixtures, &c., had cost him several thousand dollars; that he employs over one hundred operatives at his works, and that an injunction as prayed for, would produce great and irreparable damage to him.

The defendant on his side also, brought ex parte affidavits, to prove a want of originality in the complainant.

About two hundred machines which the complainant alleged were infringements of his patent, were in use in different places, in violation of his alleged rights. The patented machine formed but a small, though an important part of the combined machinery used for breaking coal; steam enginery and other apparatus, the cost of which is several thousand dollars, being requisite. The complainant did not desire an exclusive use of his machine; but desired to prevent the use of machines like it, except under his license; he being willing to let similar machines be used by others, they paying him one per cent. per ton of coal broken and screened upon them.

Mr. Porter and W. H. Rawle, for complainant.

Mr. Cadwalader, for defendant.

GRIER, Circuit Justice. The remedy by injunction in patent cases is given by courts of equity, on account of the insufficiency of that given by a court of law. It is in its nature preventive, where irreparable mischiefs are apprehended, or when the patentee is likely to be vexed by litigation and a multiplicity of suits against stubborn pirates of his invention. The circuit courts of the United States have original jurisdiction as courts of chancery in all patent cases. They do not act merely as auxiliary to courts of law, and may therefore render a final decree on a patent whose validity is contested, without sending the parties in law to try their rights. It is no reflection on juries or trial by jury to say that many disputes about the originality and infringement of patents depending upon complex mathematical calculations, upon a knowledge of the principles of chemical science, and of mechanical philosophy, cannot be satisfactorily decided by the verdict of twelve men, a majority, if not all of whom, have no knowledge or experience on the subjects they are called to decide on.

But while courts of equity will in some cases decide such questions on final hearing, without the assistance of courts of law, it does not follow that in every motion for preliminary injunction, the court will try and determine the whole case on ex parte affidavits, on five days' notice, like a court of "pied poudre."

In cases of waste, purpresture and nuisance, where the mischief done by their continuance till final hearing, may be irreparable; or where the injury or loss to the defendant by this interposition may not be of importance, or the delay in exercising his rights could be easily compensated; such preliminary interference may be necessary to the ends of justice, even where the equity of the bill is denied by the defendant. In the case of infringement of patents, such can seldom be the case, and such preliminary intervention can only be invoked in case of wanton and stubborn persistence in pirating an invention. the title to which has been clearly established either by trial at law, or by long and peaceable possession. Hence we have refused to grant a preliminary injunction where the defendant denies on oath either the originality of the invention or the infringement of the patent, leaving the decision of the question till final hearing. It must be a very strong case in-

deed, either of impending mischief to the complainant, or where the court, by having the machines or models before them, can see clearly that the defence set up is a mistake or a mere pretence, that the court will thus summarily interfere by granting execution before final judgment, where the defendant alleges under oath a valid defence, and denies the equity of the plaintiff.

There are cases, also, in which this preliminary injunction would cause irreparable injury to the defendant, with no corresponding benefit to the patentee.

Where the profits from a patented invention arise from a monopoly of the sale of the machine, medicine, or composition invented, and the competition of the defendant may be highly injurious to the established legal rights of the patentee, it may be a very proper exercise of the discretion of the chancellor to restrain the defendant from infringing till he has established his right, if he pretends to have any. But the case is very different where the supposed infringement consists in the use of some improvement in expensive machinery, which has been adopted in good faith by a defendant, and where the profit of the patentee consists, not in the monopoly of selling his machine, but in the price of licenses given to others to use it. In such a case it is the interest of the patentee that all persons should use his improvement, provided they pay him his fee for a license. The injury to him is not in using his invention, but in not paying for such use. It would be an abuse of the discretion of the court to stop a mill or furnace because it may have used some patented improvement in its machinery. It may ruin the defendant without any corresponding benefit whatever to the patentee. The only injury to him is the nonpayment of his license, which will be remedied by the final decree of the court, if the defendant shall be found a wrongdoer. The patent in this case is for certain rollers used in the machinery for breaking and screening anthracite coal; they form but a small, though important part of the combined machinery for the purpose. The steam engine and other apparatus necessary to the operation cost many thousands of dollars. The patentee has a fixed price for the use of his invention, one cent per ton. As between these parties alone, it is the interest of the complainant that the respondent should continue to use his invention, provided he pays the cent per ton. An injunction, by stopping the business of the defendant, may be ruinous to him. The only use to complainant would be an unjust one. It would deliver the defendant over to him with a rope around his neck, and compel him to accept any terms dictated by the patentee. The defendant has sworn to his belief that he has a good and sufficient defence. Witnesses have sworn that the patentee is not the original and first inventor of the machine. The de-

fendant has a right to a hearing before he is condemned as a pirate or infringer of the complainant's rights. Yet the granting of this injunction would compel him to accept the complainant's terms, and buy his peace without a hearing. And not only so, but it is alleged, and not denied, that some two hundred others would be compelled to do the same.

"It seems to me," says Lord Cottenham, in Neilson v. Thompson, [Webst. Pat. Cas. 286,] "that stopping the works by injunction, under these circumstances, is just inverting the purpose for which an injunction is used. An injunction is used for preventing mischief; this would be using the injunction for the purpose of creating a mischief—because the plaintiff cannot possibly be injured. All that he asks, all that he demands, all that he ever expects, is one shilling per ton (and in this case, a cent per ton.) The injunction would be extremely prejudicial to the defendants, and do no possible good to the plaintiff, for the purpose for which it may be used. It may, by operating as a pressure upon the defendant, produce a benefit. But that is not the object of the writ. The object of the court is to preserve to each party the benefit he is entitled to, until the question of right is tried, and that may entirely be secured by the defendants undertaking to keep an account. If the plaintiff is entitled, the court will have an opportunity of putting him precisely in the position he would have stood in if this question had not arisen."

But it is contended that the court are bound to give the plaintiff the benefit of this interlocutory injunction, whatever use he may be disposed to make of it, because there has been a verdict of a jury establishing the validity of this patent, and a peaceable possession of the rights conferred by it.

Admitting the court would be justified for these reasons, to grant this motion, without any exercise of discretion founded on the reasons we have given, we do not think that these assertions are supported by the evidence. It is true there has been a verdict on a former trial between other parties. But that verdict was set aside by the court as contrary to law, and it moreover appears that the defence now offered to the validity of the patent, was not before the jury, nor passed upon by them. They were instructed by the court to assess the damages, without reference to any other question. In a subsequent trial, the same court decided against the validity of the patent, on questions of law, which were afterwards reversed by the supreme court. But in none of these trials did either the court or jury pass upon the defence, as to the originality of the plaintiff's invention, on the facts now submitted. The verdicts in the cases can therefore have neither a technical nor moral effect in the decision of the present motion.

Neither can the evidence of long possession benefit the plaintiff; for it has not existed.

On the contrary, after the decision·of the circuit court against the validity of the plaintiff's patent, those who had previously.agreed to pay the plaintiff for the use of his invention, have ceased to do so, and many others, acting in good faith, have used the invention in their coal breaking machines, in hostility and adverse to the plaintiff's claims. It has been admitted on the argument, that some two hundred machines are in use by persons who resist the claim of the patentee.

In every view I can take of the case, I think the granting of this motion would be an injudicious use of the discretion of the court, and wrong to the defendants, who, for anything that appears. may believe that they have an honest defence to this action, and are, therefore, entitled to full and final hearing before they are condemned.

If this motion were granted, they would be compelled to submit without a trial of their rights, which would be contrary to the first principles of practice, and an act of sheer tyranny in the court. Without intimating any opinion as to the validity of this patent, or the truth of the defence, the court must refuse this motion, with costs, and order an issue between the parties as to the validity of this patent, to be tried before a jury on the first Monday of April next.

Injunction refused, but defendant ordered to keep an account.

[NOTE. Patent No. 3,292 was granted to J. Batten October 6, 1843; reissued September 4, 1849, (No. 142.) For another case involving this patent, see Batten v. Taggert, Case No. 1,107.]